UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **QUANQING (CHANGSHU) CLOTH-MAKING Co. LTD.,**<br><br>Plaintiff,<br><br>v.<br><br>**PILGRIM WORLDWIDE TRADING, INC.,**<br><br>Defendant. | Civil Action No. 2:09-cv-03785<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

In this action, Plaintiff Quanquing (Changshu) Cloth-Making Co. Ltd. seeks to confirm an arbitration award, with prejudgment interest, in the amount of $337,806.91, as determined by the Chinese International Economic and Trade Arbitration Commission ("CIETAC"), against Defendant Pilgrim Worldwide Trading, Inc. under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"[1]). The dispute relates to Defendant's alleged purchase from Plaintiff of men's suits under the terms of an agreement which purportedly provided for arbitration.

Both parties have moved for summary judgment. For the reasons elaborated below, the Court will **GRANT** Defendant's motion for summary judgment, and the Court will **DENY** Plaintiff's motion for summary judgment.

**II.   FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

The general chronology of events does not appear to be disputed.

Pilgrim, an entity with facilities in New Jersey and its President Sei Ho Go ("Go") had

---

[1] Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, *available at* 1970 WL 104417, *codified at* 9 U.S.C. § 201-08 (2006).

an established business relationship with Han Joo Kim ("Kim"), who operated M.A. Trading International ("M.A.") and Tae Han Trading ("THT"), two businesses located in South Korea. In or around September 2005, Pilgrim issued three purchase orders ("POs") to MA.

Thereafter, Kim notified Go that delivery would be delayed. New contractual terms were agreed to and Kim sent a "Sales Confirmation" to Go in November 2005.[2] The Sales Confirmation from Kim to Go referred to "Quanqing (Changshu) Cloth Making Co., Ltd." Neither Go nor anyone else at Pilgrim signed the Sales Confirmation. Nor did Kim ask for anyone to sign it. Nothing in the Sales Confirmation on its face indicates that Kim was an agent or representative of Pilgrim. Go understood the reference to Quanqing in the Sales Confirmation to refer to a subcontractor Kim was making use of. The Sales Confirmation provides for arbitration of disputes by CIETAC. In December 2005, Pilgrim issued revised POs to MA.

Subsequently the garments were delivered and Pilgrim made payments to Kim's entities, MA or THT. Kim also directed that some payments should be made to "Changshu Winprofit Ime and Exp Co." and Pilgrim complied with those directions. Kim died in 2007.

On or about March 5, 2008, CIETAC sent Pilgrim notice of the arbitration proceedings. Plaintiff claims the notice was in Chinese, but that it also came with an English translation. Defendant claims that it only received documents in Chinese, that neither Go nor anyone at Pilgrim speaks Chinese, and that it ignored those documents. CIETAC held the proceedings in the absence of Pilgrim and, not surprisingly, found for Plaintiff.

Before the Court are the parties' cross-motions for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the

---

[2] Each party has produced a different Sales Confirmation. The Sales Confirmation put forward by Defendant reflects a purchase price of $332,583, but the Sales Confirmation put forward by Plaintiff reflects a purchase price in excess of $500,000. They are both dated November 29, 2005.

non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

If the nonmoving party has the burden of proof at trial, the party moving for summary judgment is not required to "support its motion with affidavits or other similar material negating the opponent's claim," *Celotex*, 477 U.S. at 323, in order to discharge this "initial responsibility." In this situation, the movant "[merely] show[s] – that is, point[s] out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

IV.    ANALYSIS

Plaintiff seeks confirmation of the CEITAC arbitration award under 9 U.S.C. § 207. Section 207 provides federal district courts with jurisdiction to confirm arbitration awards under the New York Convention. Article II of the Convention provides:

    1.    Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any

>    differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
>
> 2.  The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

Here the only purported agreement put forward by Plaintiff is the Sales Confirmation. Pilgrim did not sign that agreement. It is singed by Kim on behalf of the "buyer," albeit for the "account of Pilgrim World Wide Trading Inc." No evidence has been put forward establishing that the late Kim was a representative or agent of Defendant Pilgrim. Thus there is no signed writing binding Pilgrim to the Sales Confirmation or its arbitration clause.

"It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, No. 08-1214, slip op. at 6 (U.S. June 24, 2010) (quotation marks and brackets omitted). Arbitration is a matter of contract, that is, where a party has not expressly agreed to arbitrate, a court will not generally compel it do so. *Cf. E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates*, *S.A.S*, 269 F.3d 187, 194 (3d Cir. 2001) ("Similarly, there is no dispute that a non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement." (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999))). Plaintiff does not argue that either Go or anyone else on behalf of Pilgrim signed the purported agreement, that is, the Sales Confirmation, which provides for arbitration. Rather, Plaintiff argues that Defendant is equitably estopped from denying its obligation to arbitrate.

One such exception to the general rule against binding non-signatories to agreements to arbitrate is equitable estoppel. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 534 n.18 (3d Cir. 2009) (Thomas, J.) (recognizing "five theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel"). A non-signatory to a contract will be estopped from denying obligations under a contract, including a provision providing for the arbitration of disputes, if "the non-signatory *knowingly exploits* the agreement containing the arbitration clause despite having never signed the agreement." *DuPont*, 269 F.3d at 199; *see also Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (estopping non-signatory from denying arbitration agreement where it directly benefitted, rather than indirectly benefitted from the agreement); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (applying

4

equitable estoppel doctrine to bind non-signatory to an arbitration provision where the non-signatory "consistently maintained that other provisions of the same contract should be enforced to benefit him"). Defendant's undisputed conduct does not appear to be one of "knowing exploitation of the agreement." Defendant's revised POs, like the Sales Confirmation, reflect that it agreed to pay for men's garments; it accepted delivery and paid for the garments.  Defendant has not consistently maintained that any provisions of the purported contract should be enforced. Defendant has not exploited contractual provisions as a sword in litigation by seeking enforcement and then used the fact that it did not sign the contract as a shield in order to deny obligations under the contract. Defendant has benefitted from the *contractual relationship* between the parties to the Sales Confirmation, Kim and Quanqing, by accepting delivery of the good as provided in its POs. But it has not actively sought direct benefits under the agreement itself or sought to enforce or exploit express provisions of that contract.

## V.   CONCLUSION

For the reasons elaborated above, the Court **GRANTS** Defendant's motion for summary judgment. Plaintiff's motion for summary judgment is **DENIED.**

An appropriate order accompanies this memorandum opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

**DATE: June 28, 2010**